### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

JOHN MOLLEUR, individually and
for others similarly situated,

      Plaintiff,

vs.                                       Civ. No. 22-777 DHU/SCY

NES GLOBAL, LLC,

      Defendant.

### ORDER GRANTING IN PART AND
### DENYING IN PART MOTION TO COMPEL

In this proposed class action case, Plaintiff John Molleur alleges that Defendant NES Global paid him and other employees "straight time for overtime"—i.e., it paid employees the same hourly rate for all hours worked each week, including those over 40 hours—in violation of the New Mexico Minimum Wage Act. Doc. 1-1 at 2. Presently before the Court is Plaintiff's Motion to Compel Discovery. Doc. 31; *see also* Doc. 33 (response); Doc. 40 (reply). Plaintiff seeks to the compel responses to several discovery requests from his second set of discovery (or what he calls "class discovery"), and the Court will address each request in turn, grouping together related topics.

### LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) permits parties to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Discovery relevance is "to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (internal quotation and citation omitted).

## INITIAL MATTERS

Before turning to the merits of the motion to compel, the Court addresses two initial matters Defendant has raised: Plaintiff's failure to meet and confer and Plaintiff's excessive exhibits.

### 1. Meet and Confer

First, Defendant argues that Plaintiff's motion should be denied because Plaintiff failed to properly meet and confer on the allegedly deficient discovery responses. Doc. 33 at 21. Under Federal Rule of Civil Procedure 37(a)(1), a motion to compel discovery must "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." In the Court's Initial Scheduling Order it reminded the parties as much:

> The Court will not entertain any motion to resolve a discovery dispute pursuant to Fed. R. Civ. P. 26 through 37, or a motion to quash or modify a subpoena pursuant to Fed. R. Civ. P. 45(c), unless the attorney for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion. Every certification required by Fed. R. Civ. P. 26(c) and 37 and this rule related to the efforts of the parties to resolve discovery or disclosure disputes must describe with particularity the steps taken by all attorneys to resolve the issues in dispute. A "reasonable effort to confer" means more than mailing or faxing a letter to the opposing party. It requires that the parties in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so. Absent exceptional circumstances, parties should converse in person or telephonically.

Doc. 12 at 2 n.2.

2

In this case, Defendant responded to Plaintiff's class discovery on February 17, 2023 and provided amended responses on March 2, 2023. Doc. 31-5. Plaintiff explains that on March 21, 2023, his counsel conferred with defense counsel regarding the discovery responses and sent a letter outlining purported deficiencies. Doc. 31 at 3; *see also* Doc. 31-6 (letter). Defendant supplemented its responses on April 3, Doc. 31-7, but Plaintiff remained unsatisfied and so filed his motion on April 4. Doc. 31.

While Plaintiff made some effort to meet and confer, that effort fell short of the Court's instructions. First, Plaintiff does not describe with particularity what steps were taken by the parties to resolve the issues in dispute, but merely states in his motion that "Molleur conferred with NES as to deficiencies in its discovery responses, and sent a deficiency letter setting forth the same." Doc. 31 at 3. That is, the Court instructed the parties that, "Absent exceptional circumstances, parties should converse in person or telephonically." Doc. 12 at 2 n.2. Plaintiff does not indicate whether counsel actually spoke to each other or, if they did not, what exceptional circumstances existed to justify not having a conversation about this discovery dispute.

Additionally, it appears that Plaintiff did not confer on the actual motion. *See* D.N.M. LR-Civ. 7.1. Although Plaintiff sent a letter regarding certain deficiencies, that letter did not include all the same concerns and arguments raised in his motion, such as the arguments regarding the number of putative class members. Because Plaintiff did not confer with Defendant on the actual motion, Defendant did not have a chance to respond and discuss those concerns with Plaintiff prior to briefing.

Nonetheless, given the March 21 letter, Plaintiff's meet and confer efforts were not totally absent. The Court, in its discretion, thus declines to summarily deny Plaintiff's motion

and will consider it on the merits. The Court advises Plaintiff, however, that going forward he should review and follow the Court's meet and confer instructions concerning discovery disputes.

### 2. Plaintiff's Exhibits

Plaintiff attached 13 exhibits to his motion, totaling 150 pages. Doc. 31-1 to 31-13. In its response, Defendant moves to strike the exhibits. Doc. 33 at 5-6. First, Defendant argues that the total number of pages of Plaintiff's exhibits is triple that allowed by this Court's local rules. Although this is correct, Plaintiff has since moved for an order extending the allowable pages, Doc. 38, which the Court granted, Doc. 39.

Second, citing Local Rule 10.5, Defendant argues that Plaintiff unnecessarily attached the entirety of both sets of his discovery requests as well as all of Defendant's responses, instead of just attaching those responses at issue in the motion. Doc. 33 at 6; *see* D.N.M. LR-Civ. 10.5 ("[a] party may file only those pages of an exhibit which are to be brought to the Court's attention"). The Court agrees that some exhibits are unnecessary. For instance, Exhibit 2 is Plaintiff's first set of discovery which Plaintiff only references in the procedural history portion of his motion. Nonetheless, because Plaintiff received an order (albeit belated) extending the page limitation and because his exhibits are clearly separated and labeled such that the Court can easily review only the relevant exhibits, the Court finds striking certain exhibits unnecessary. Defendant also requests that the Court strike exhibit 1, which is a copy of Plaintiff's original class action complaint. Again, although this exhibit is unnecessary since it appears elsewhere on the docket (Doc. 1-1), no compelling reason exists to strike it and doing so would require more resources than not doing so.

For these reasons, the Court declines to strike Plaintiff's exhibits.

**ANALYSIS**

**1. Putative Class Members**

Plaintiff argues that Defendant has failed to disclose the identities of all putative class members. Specifically, Interrogatory No. 1 asks Defendant to "IDENTIFY each PUTATIVE CLASS MEMBER name, position(s), job title(s), dates and location(s) of employment with YOU, last known home address, phone number, and email address." Doc. 31-4 at 7. Four Requests for Production ask for related information:

> Request for Production No. 3: All DOCUMENTS, with computer-readable data, identifying all PUTATIVE CLASS MEMBERS (by name, dates of employment/work, locations where services rendered, the compensation you paid to them during the RELEVANT TIME PERIOD, their last known home address, phone number, and any email addresses).

> Request for Production No. 4: All documents "submitted to NES's Commercial and Legal Team" for review or approval of any decision regarding the classification or pay of PLAINTIFF or PUTATIVE CLASS MEMBERS.

> Request for Production No. 10: The timesheets and payroll records for PLAINTIFF and PUTATIVE CLASS MEMBER for the RELEVANT TIME PERIOD.

> Request for Production No. 11: The DOCUMENTS reflecting the job duties or job descriptions for PLAINTIFF and PUTATIVE CLASS MEMBER during the RELEVANT TIME PERIOD.

*Id.* In response, Defendant identified 10 putative class members by name and dates of employment and produced the requested documents for those 10 people. Doc. 31-7 at 4-5, 9-14, 18-21. Defendant also withheld the putative class members' contact information based on a privacy objection. *Id.* at 4. Plaintiff now moves to compel, arguing that Defendant failed to disclose all putative class members and related documents for those class members.[1]

---

[1] Plaintiff only summarily mentions that Defendant failed provide contact information for the putative class members and does not address Defendant's privacy objection. *See* Doc. 31 at 7.

As used for discovery, Plaintiff defined putative class members as "all current and former workers employed by, or working on behalf of, NES in New Mexico between August 12, 2019 and the present, who were paid the same hourly rate for all hours worked, including those hours over 40 in a workweek," including all qualifying persons, regardless of whether NES "contend[s] a worker was paid a 'salary' or 'retainer' plus an hourly bonus." Doc. 31-4 at 4. To gather this employee information, Defendant explains it has two types of employees: internal employees and contract employees, typically referred to as "Candidates." Doc. 33 at 7; Doc. 33-1 ¶ 5. As for Candidates, those employees are paid in two ways: non-exempt Candidate employees, who are paid time-and-a-half for all hours worked over forty in each workweek (and thus would not fit Plaintiff's definition) and exempt Candidate employees, who are paid a guaranteed weekly salary (or a "retainer") plus additional compensation based on either an hourly or daily rate basis. Doc. 33 at 7-8; Doc. 33-1 ¶ 6. Thus, when gathering a list of putative class members, Defendant represents it provided Plaintiff a complete list of all exempt employees who worked in New Mexico since August 12, 2019. Doc. 33 at 8; Doc. 33-1 ¶ 7.

Despite Defendant's representation, Plaintiff provides several reasons it believes Defendant's putative class list is incomplete. First, Plaintiff argues that Defendant limited its disclosure to only those employees who worked at two New Mexico locations (Los Alamos and Questa), those who worked for only two New Mexico clients (Siemens and Chevron), and those who had job titles similar to Plaintiff's. Doc. 31 at 7-8. To support this argument, Plaintiff attaches LinkedIn profiles for employees Plaintiff claims worked for Defendant during the relevant time in other locations, such as in Jal and Farmington, Docs. 31-8, 31-13, and

---

Thus, to the extent Plaintiff intends to move to compel Defendant to produce the contact information of the putative class members, the Court denies this request as inadequately briefed.

Defendant's job postings from Carlsbad, New Mexico, Docs. 31-9, 31-10, 31-11. Defendant counters that the LinkedIn profiles and the job postings all relate to Bedrock Petroleum Consultants, which is a separate entity from Defendant (although it is owned by the same parent company). Doc. 33 at 10-11.

The Court agrees with Defendant that Plaintiff's exhibits do not demonstrate that Defendant's discovery response is incomplete. First, although Plaintiff provides examples of individuals he claims worked for Defendant, the information he provides does not demonstrate that, even assuming those individuals worked for Defendant, that they fall within his discovery class definition. For instance, the LinkedIn profile Plaintiff provides contains no information about whether that person was an exempt or non-exempt employee. Similarly, assuming Defendant had a job posting in Carlsbad, Plaintiff provides no evidence that Defendant hired employees in Carlsbad that fit the putative class definition.

More importantly, Defendant has represented that the individuals in the examples Plaintiff provides worked for a different company. The Court has no reason to doubt that representation. Thus, the LinkedIn profile and job posting examples that Plaintiff provides fail to establish that Defendant has withheld information responsive to Plaintiff's discovery request.

The same is true for Plaintiff's argument regarding Paulito Gallegos. Plaintiff explains that his counsel is involved in a separate case against Defendant and, in that case, Paulito Gallegos opted-in to the class. In the present case, Defendant disclosed Mr. Gallegos as a putative class member, but he was the only disclosed employee staffed to Chevron in Questa, New Mexico. Thus, Plaintiff reasons that there must be other putative class members staffed to Chevron in Questa that Defendant did not disclose because "[i]t strains credulity for NES to assert that for the whole of the three-year limitations period, it had no employees in Questa

7

(other than Gallegos) who fall within [Plaintiff's] proposed class definition." Doc. 40 at 8. This argument, however, is purely speculative. As with Plaintiff's other argument, it assumes that the putative class must be larger than 10 people and so Defendant must have failed to disclose putative class members.

Defendant has filed an affidavit from Lowri Thomas, its regional legal director, who swears, "I have reviewed NES's internal records and confirm that the list of potential class members provided in NES's responses to Plaintiff's Second Set of Discovery Requests is a complete and accurate list of all current and former NES employees classified as exempt who performed work in New Mexico since August 12, 2019 and were paid a guaranteed weekly Retainer plus additional compensation on an hourly basis for all hours worked." The Court accepts Lowri Thomas' representation and will not require Defendant to provide further assurance. In reply, Plaintiff questions whether Defendant has provided information regarding what it refers to as "internal" employees. Doc. 40 at 9. The Court reads Lowri Thomas' declaration as encompassing both "internal" and "Candidate" employees. However, if this is mistaken and Defendant has only provided discovery related to "Candidate" employees, Defendant shall provide discovery related to "internal" employees that fit Plaintiff's discovery class definition. Otherwise, Plaintiff's motion to compel as to Interrogatory No. 1 and Requests for Production Nos. 3, 4, 10, and 11 is denied.

**2. Master Services Agreement**

Request for Production No. 12 seeks "[t]he master services agreement, along with any addendums thereto, between YOU and each third party for which PLAINTIFF or the PUTATIVE CLASS MEMBERS worked during the RELEVANT TIME PERIOD." Doc. 31-7 at 21. In other words, Defendant offers staffing services to clients and Plaintiff seeks the master

services agreement ("MSA") between Defendant and its clients for any job a putative class member worked. Defendant argues that the MSAs are irrelevant because they "contain no provisions specifically relating to Plaintiff's or the Putative Class Member's classification of exempt under the NMMWA or their method or rate of pay or overtime compensation." Doc. 33 at 40. Plaintiff, on the other hand, argues that the MSAs are relevant as to "the circumstances of employment for each Class Member, the pay for each Class Member as described by NES to its client, and the scope of NES clients in New Mexico to which NES staffed exempt workers." Doc. 31 at 9. And to dispute Defendant's characterization of the MSAs, Plaintiff attaches an example agreement.[2] Doc. 40-3.

The Court agrees that the exhibit MSA discusses certain circumstances of employment for individuals Defendant placed with clients. *See, e.g.*, Doc. 40-3 ¶ 3.3 (Defendant's obligation to ensure the suitability of candidates regarding skills, qualifications, and experience); ¶ 3.7 (Defendant's obligation to ensure candidates meet and follow certain standards). Additionally, the MSAs would show the "scope of [Defendant] clients in New Mexico to which [Defendant] staffed exempt workers" (Doc. 31 at 9) in that the agreements would show which clients Defendant contracted with to staff workers. But, the Court agrees with Defendant that those categories of information are not relevant to the present case. At issue in this case is not which third-party client putative class members were placed with, or the circumstances of that placement, but the pay employees received. *See, e.g.*, Doc. 1-1 (complaint). And Plaintiff makes no allegations that anyone other than Defendant was responsible for paying the putative class

---

[2] The exhibit MSA is unrelated to the present case; it is an agreement between Defendant and a third-party that Defendant filed on the public docket as an attachment to a complaint Defendant against the third-party. Plaintiff uses it as an example of the type of information that is likely contained in the agreements it seeks.

members. *See* Doc. 1-1 ¶ 42 ("[Defendant] controlled Plaintiff's and the Class Members' pay and determined the amount and type of compensation paid to Plaintiff and the Class Members."). Indeed, the example MSA indicates that Defendant is "solely responsible for payments . . . due to Personnel." Doc. 40-3 ¶ 8.1. Thus, which third-party client putative class members worked for, or the circumstances of that placement, is irrelevant to the present case.

As to the last category of information that Plaintiff alleges the MSAs will show— the pay for each Class Member as described by NES to its client—the Court agrees that such information would be relevant to Plaintiff's claim, but disagrees that the MSAs contain such information. Defendant represents the MSAs contain no information about method or rate of pay, overtime compensation, or classification under the NMMWA. Doc. 33 at 19. And this assertion is supported by the exhibit MSA, which contains no such pay information. *See* Doc. 40-3.[3]

Citing *Pruess v. Presbyterian Health Plan, Inc.*, 579 F. Supp. 3d 1235 (D.N.M. 2022), Plaintiff argues that courts in this district "have found that employer's third-party service agreements are relevant to potential exemptions as well as to class certification, and are reasonably calculated to lead to the discovery of admissible evidence in a collective action to recover overtime pay." Doc. 40 at 11. *Pruess* involved a putative class action case in which the plaintiffs alleged that the defendants misclassified them as exempt under overtime law. 579 F. Supp. at 1239. The plaintiff sought the defendants' health care contracts with third-party providers because such contracts set forth the educational and licensure requirements, which

---

[3] The only part of exhibit 40-3 that discusses the pay rate is the first page, titled "Proposal for Provision of Service." Doc. 40-3 at 3. This appears to be a separate document from the MSA. That is, the MSA appears to start on the following page and includes a separate title. Doc. 40-3 at 4. To the extent any Proposal for Provision of Services is part of any MSA responsive to Plaintiff's request, Defendant should produce those documents in response to Request for Production No. 12. To the extent such documents are not part of the MSA, the Court will not order their production as they are outside the scope of Plaintiff's current discovery request.

went directly to whether the learned professional exemption for overtime wages applied. *Id.* at 1426. After the parties reached an agreement as to the limited scope of the request, the court found plaintiff's request to be relevant to the issue of the learned professional exemption. *Id.* at 1427. That holding is inapplicable here because Plaintiff makes no argument that he needs the MSAs in order to evaluate an overtime wage exemption. Other than summarily stating that the MSAs are relevant to the "circumstances of employment," Doc. 31 at 9, Plaintiff makes no argument as to how circumstances of employment—other than pay—are relevant to his claim. And as discussed above, Defendant represents that the MSAs do not contain wage information, which would be relevant to Plaintiff's claims.

For these reasons, the Court agrees with Defendant that the requested master services agreements are irrelevant to Plaintiff's claims and will deny Plaintiff's motion to compel as to Request for Production No. 12.

### 3. Corporate Policies

Interrogatory No. 3 asks Defendant to "[d]escribe the policies and procedures used by YOU to ensure compliance with federal and state wage and overtime payment laws and regulations, including but not limited to the FLSA and NMMWA." Doc. 31-7 at 5. Relatedly, Request for Production No. 5 seeks "[a]ll documents and communication referring or relating to your compensation policy that PLAINTIFF or PUTATIVE CLASS MEMBERS should be paid hourly or subject to a 'Retainer.'" *Id.* at 5. And Request for Production No. 9 seeks "[t]he DOCUMENTS that contain YOUR corporate policies and procedures regarding efforts to comply with the NMMWA." *Id.* at 17. Defendant provided responses to all three, but Plaintiff asserts that the responses are insufficient.

Specifically, Plaintiff asserts that Defendant only produced specific employee personnel files and did not produce any corporate policies, general policy information, or employee handbooks. Doc. 31 at 10. But a review of the documents listed as produced by Defendant indicates otherwise. In addition to documents related to individual employees (such as "John Molleur FLSA Questionnaire"), Defendant produced: "NES FLSA Wage and Hour Presentation"; "NES FLSA Questionnaire Guide"; "NES FLSA Training and Process Updates"; and "Introduction: New Hourly Rate Contract with NES Global Talent." Doc. 31-7 at 6; *see also id.* at 14-15, 17-18. And, Defendant confirmed in both its discovery responses and in briefing that it has no other responsive employment documents. Doc. 31-7 at 15, 18; Doc. 33 at 16.

Plaintiff remains unsatisfied with this response, asserting that "[Defendant] would have [Plaintiff] and the Court believe that the extent of its corporate policies regarding wage and hour compliance comprise only 23 pages, contain no internal emails or other communications, and are silent as to the [New Mexico Minimum Wage Act]." Doc. 40 at 4. But Plaintiff's frustration that only a small amount of documents exist[4] does not persuade the Court that there is anything further for it to compel when Defendant has repeatedly confirmed that it has not withheld any responsive documents.

Plaintiff argues, for the first time in reply, that Defendant must do something more than just offer a conclusory statement that it has nothing further to produce: "Defendant has not produced the requested documents, has not offered an affidavit detailing its efforts to determine whether the requested documents exist, has not suggested or offered other discovery avenues that

---

[4] To be clear, Defendant produced more than 23 pages in response to these questions as it also produced numerous documents related specifically to Plaintiff and each putative class member, such as contract offer letters, emails regarding candidate exemption questionnaires, and FLSA questionnaires. Doc. 31-7 at 6, 14-15, 17-18.

would allow [Plaintiff] to verify the existence, if any, of the requested documents at issue." Doc. 40 at 4. In support, Plaintiff cites *Bhasker v. Fin. Indem. Co.*, No. CV 17-260 JB/JHR, 2018 WL 4773364 (D.N.M. Oct. 3, 2018), asserting that the court in *Bhasker* was not satisfied by a statement that no documents exist and required the defendant to permit the plaintiff to engage in third-party discovery to verify the lack of documents at issue. Doc. 40 at 4.

But Plaintiff does not accurately describe the court's holding in *Bhasker*. In that case, the plaintiff requested all communications the insurer defendant had with agents, brokers, or agencies regarding underinsured motorist coverage. *Bhasker*, 2018 WL 4773364, at *6. The defendant asserted such documents did not exist, but, in an effort to resolve the dispute, it provided the plaintiff a list of agents so that the plaintiff could engage in third-party discovery. *Id.* at *7. Contrary to Plaintiff's assertion, the *Bhasker* court did not require the defendant to participate in such third-party discovery; the defendant offered that solution on its own. *Id.* Instead, the *Bhasker* court held that "to the extent that Defendant argues that such communications do not exist, Plaintiff must accept Defendant's verified answer stating so." *Id.* Here too, given that Defendant has produced responsive documents and has represented to the Court that no other responsive documents exist, the Court accepts this answer.

For these reasons, the Court denies Plaintiff's motion to compel as to Interrogatory No. 3 and Requests for Production Nos. 5 and 9.

### 4. Affirmative Defenses

Interrogatory No. 4 asks Defendant to

State the factual and legal basis for your contention(s) that the proposed class is inappropriate, specifically addressing the following affirmative defenses raised in YOUR Answer:
a. "[t]he types of claims alleged … are matters in which individual questions predominate and, accordingly, are not appropriate for class treatment." Doc. 6 at 23 ¶ 10.

     b. ["][t]he proposed class as defined in the Complaint is overly broad and
unmanageable[.]" Id. at 6 ¶ 12.
     c. PLAINTIFF "cannot adequately represent the interests of the proposed class."
Id. at ¶¶ 2, 13; and
     d. PLAINTIFF "is not similarly situated to members of the proposed class to
whom he purports and seeks to represent and cannot identify a group similarly
situated employees or former employees of Defendant[.]" Id. at ¶¶ 2, 14.

Doc. 31-7 at 7. Similarly, Request for Production No. 1 seeks "[t]he DOCUMENTS YOU will

rely on to prove YOUR affirmative defenses." *Id.* at 8. As to Interrogatory No. 4, Defendant

objected and stated that it "will supplement its response to provide a complete answer after the

close of class discovery." Doc. 31-7 at 7. As to Request for Production No. 1, Defendant directed

Plaintiff to "all documents identified in and produced along with [Defendant's] Initial

Disclosures and as well as all other documents produced in this litigation." *Id.* at 8. Plaintiff

moves to compel complete answers to both requests.

     Defendant explains in its response brief that it has produced numerous documents

relevant to its defenses to class certification, but that it properly objected to the contention

discovery "as premature and more appropriately answered after the close of discovery."[5] Doc. 33

at 20. Indeed, some courts have deferred "answers to contention interrogatories until after a

substantial amount of discovery has been completed." *Lucero v. Valdez*, 240 F.R.D. 591, 594

(D.N.M. 2007). In this case, however, class discovery is nearing its end. The Court entered a

Scheduling Order allowing class discovery to begin on January 31, 2023. Doc. 22. Under that

Order, class discovery closes on July 10, 2023 and Plaintiff's motion for class certification is due

August 10, 2023. *Id.* Accordingly, the Court rejects Defendant's argument that the contention

---

[5] To the extent Defendant also intends to object to Interrogatory No. 4 as compound, the Court
finds that such objection is waived because Defendant merely states that the interrogatory has
"multiple subparts" without making any argument or further objection. Doc. 33 at 20.

interrogatory is premature. Defendant shall fully respond to Interrogatory No. 4 and Request for Production No. 1.

<b>CONCLUSION</b>

For the reasons stated above, Plaintiff's Motion to Compel (Doc. 31) is GRANTED IN PART and DENIED IN PART. Within 30 days of the entry of this Order, Defendant shall respond to the following discovery:

- Interrogatory No. 1 and Requests for Production No. 3, 4, 10, 11: If Defendant has only provided discovery related to "Candidate" employees, Defendant shall provide discovery related to "internal" employees that fit Plaintiff's discovery class definition.

- Interrogatory No. 4 and Request for Production No. 1: Defendant shall provide complete responses to both.

The remainder of the motion to compel is denied. Additionally, because the Court grants the motion to compel in part, the Court denies Defendant's request for attorney's fees and costs. *See* Fed. R. Civ. P. 37(a)(5)(C).

**STEVEN C. YARBROUGH**
**United States Magistrate Judge**